

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-26-00032-CV

_____

IN THE INTEREST OF J.M., A CHILD

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 24C0386-102

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Mother appeals from the trial court's termination of her parental rights to her child, J.M.[1] The trial court terminated Mother's parental rights after finding that she (1) "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[;]" (2) "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[;]" (3) "contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261 [of the Texas Family Code]"; and (4) "constructively abandoned the child." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (I), (N) (Supp.). Although we conclude that the evidence was insufficient to terminate Mother's parental rights under ground (D), we find that legally sufficient evidence supports the unchallenged statutory grounds for termination as well as under statutory ground (E). We also find that the trial court's determination that termination was in J.M.'s best interests is supported by the record. *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (Supp.). We, therefore, affirm the judgment, as modified.

---

[1]We use initials to protect the identity of the child and refer to the child's parents as Mother and Father. *See* TEX. R. APP. P. 9.8.

2

## I. Background[2]

At the outset of the final hearing, counsel for Mother noted that he had been unable to maintain contact with Mother, though the case had been "open for a while" and Mother "had [counsel's] contact information." Mother was not present for that hearing.

Ashley Sanders, an investigator with the Department, testified that her involvement in the case involving Mother and J.M. began in April 2024, when there was an allegation of neglectful supervision. J.M. was born to Mother while she was incarcerated. Father[3] was also incarcerated, and there was no family able to take care of J.M. Sanders also testified that she was familiar with Mother because Sanders had been the caseworker in a prior case in Arkansas where Mother had her parental rights to her four older children terminated. The Department removed J.M., and after an adversary hearing, the Department was granted temporary managing conservatorship. The case was then transferred to 4Kids4Families.

Deana Smith was the assigned caseworker from 4Kids4Families in this matter. Smith testified that Mother received a family-service plan which was made an order of the trial court, but Mother "didn't work any of [her] services that [were] on [her] service plan." Under her service plan, Mother was required to get a psychological assessment, obtain housing, seek mental-health services, and submit to drug testing regularly. Smith stated that Mother failed to

---

[2]We note that this matter is back before our Court after a previous reversal and remand. In appellate cause number 06-25-00056-CV, Mother appealed the trial court's order terminating her rights as to J.M., arguing that the termination order was void because it was based on subsections of the Texas Family Code that were neither pled nor tried by consent. *In re J.M.*, No. 06-25-00056-CV, 2025 WL 3455950 (Tex. App.—Texarkana Dec. 2, 2025, no pet.) (mem. op.). The Texas Department of Family and Protective Services conceded, and we reversed the final order and remanded for further proceedings. *Id.* at *3. The current appeal comes from the final hearing held after the reversal.

[3]Father's rights to J.M. were also terminated. Father is not a party to this appeal.

comply with her family-service plan and that Smith had concerns about Mother's drug use and her inability to maintain stable housing or employment. Smith was unable to maintain contact with Mother due to Mother's homelessness and Mother's refusal to accept Smith's visits when incarcerated. Smith stated that she believed Mother was unable to meet J.M.'s emotional or physical needs, that he would be in danger with Mother, and that Mother was unable to demonstrate parenting abilities. With Mother not having plans for the future or stable housing, Smith stated she believed termination was in J.M.'s best interests.

Joey Keilbach, a Court Appointed Special Advocate (CASA) coordinator, testified that J.M. is "precious" and "thriving" in his current placement. J.M. is in a loving, great family that is "very much" bonded to him. As to Mother, Keilbach stated that he "never had successful communication" with her, even though Mother was familiar with the termination proceedings based on the previous termination of her parental rights to her older children. He opined that Mother was unable to maintain a stable home. Ultimately, Keilbach stated that termination of Mother's parental rights was in J.M.'s best interests.

## II.    Statutory Grounds for Termination

The Texas Supreme Court has recently stated, "[T]he government may not sever the legal ties between parents and children without clearing a high bar." *In re K.N.*, No. 24-0881, 2026 WL 1614378, at *6 (Tex. June 5, 2026). Accordingly, "[a] court may terminate a parent's right to parent her child if it finds by clear and convincing evidence both that (1) the parent committed an act prohibited by Section 161.001(b)(1) of the Texas Family Code and (2) termination is in the best interest of the child." *Id.* Here, the trial court found four separate grounds supported

4

termination under Section 161.001(b)(1), grounds (D), (E), (I), and (N); however, on appeal, Mother only challenges grounds (D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (I), (N). By failing to challenge the findings under grounds (I) and (N), Mother waived any complaint about the sufficiency of the evidence to support those findings. *See id.* (requiring only one predicate ground to support termination); *In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam) (stating that "only one ground is required to terminate parental rights"). Therefore, "if we determine that the evidence was legally sufficient for the [trial court] to have found that termination was in the best interest[s] of the child, we will affirm the judgment of termination." *In re A.M.R.*, 652 S.W.3d 117, 122 (Tex. App.—Waco 2022, pet. denied).

"However, we are also required to consider the sufficiency of the evidence pursuant to Sections 161.001(b)(1)(D) or (E) if challenged even if the termination is proper as to some other section, therefore, we will also address one of those grounds." *Id.* (citing *In re N.G.*, 577 S.W.3d 230, 235–36 (Tex. 2019) (per curiam)). "This is because a finding under either section could be used in a subsequent termination of parental rights proceeding." *Id.* (citing TEX. FAM. CODE ANN. § 161.001(b)(1)(M)).

### A.    Standard of Review

"Proceedings to terminate the parent–child relationship implicate[s] rights of constitutional magnitude that qualify for heightened judicial protection." *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018). The United States Supreme Court has emphasized that "the interest of [a] parent[] in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." *Troxel v. Granville*, 530 U.S. 57, 65

(2000) (plurality op.). As a result, "[w]e strictly construe involuntary termination statutes in favor of the parent." *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

"Involuntary severance of parental rights thus requires 'clear and convincing evidence' that termination is warranted and in the child's best interest[s]." *In re A.C.*, 560 S.W.3d at 626 (quoting TEX. FAM. CODE ANN. § 161.001; *Santosky v. Kramer*, 455 U.S. 745, 748 (1982)). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Supp.); *In re N.G.*, 577 S.W.3d at 235. Therefore, this Court is "required to engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is paramount."'" *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

"[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re A.C.*, No. 06-25-00084-CV, 2026 WL 878798, at *2 (Tex. App.—

Texarkana Mar. 31, 2026, no pet.) (mem. op.) (alteration in original) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "Both legal and factual sufficiency review deal with whether 'a reasonable factfinder could form a firm belief or conviction,' but there is a difference between legal and factual sufficiency." *Id.* (quoting *In re A.C.*, 560 S.W.3d at 631).

For legal sufficiency, "we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that" termination of the parent-child relationship was in the best interests of the child. *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

By comparison, when reviewing "factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d. at 25)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so

7

significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). To make this determination, we "undertake '"an exacting review of the entire record with a healthy regard for the constitutional interests at stake."'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 503 (quoting *In re C.H.*, 89 S.W.3d at 26)).

"Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony." *In re M.S.*, No. 04-25-00782-CV, 2026 WL 1678450, at *2 (Tex. App.—San Antonio June 10, 2026, no pet. h.) (mem. op.) (citing *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021)). "This is because 'the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the "forces, powers, and influences" that may not be apparent from merely reading the record on appeal.'" *Id.* (quoting *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.))).

## B. Applicable Law

Ground D permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Ground E permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

"'[E]ndanger' means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment . . . ." *In re E.N.C.*, 384 S.W.3d at 803 (quoting *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Boyd*, 727 S.W.2d at 533); *see In re L.E.S.*, 471 S.W.3d at 923. "It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923.

## C.      Insufficient Evidence Supports the Ground D Finding

When evaluating ground D, we "examine the time prior to [the child's] removal to determine whether the environment of the home posed a danger to [his] physical or emotional well-being." *In re D.R.*, 631 S.W.3d 826, 833 (Tex. App.—Texarkana 2021, no pet.) (quoting *In re L.E.S.*, 471 S.W.3d at 926). "Ground '(D) permits termination [of parental rights] based on a single act or omission [by the parent].'" *Id.* (alterations in original) (quoting *In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.)). "[U]nlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under [Ground] (D)." *Id.* at 834 (alterations in original) (quoting *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *6 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.)).

Here, the Department intervened at the birth of J.M., removing him from Mother's care while still in the hospital. The Department did not present any evidence that J.M. tested positive for any controlled substance, that he required any specialized treatment at birth, or suffered any

9

birth defects or abnormalities. Mother never had possession of J.M. and, therefore, could not have exposed him to an environment that endangered his physical or emotional well-being. *See In re H.L.F.*, No. 12-11-00243-CV, 2012 WL 5993726, at *6 (Tex. App.—Tyler Nov. 30, 2012, pet. denied) (mem. op.) (citing *In re A.S.*, 261 S.W.3d 76, 83–85 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("evidence insufficient when child removed at birth and Department offered no evidence of actual surroundings or conditions")).

> After viewing the evidence in the light most favorable to the finding and reviewing the undisputed facts, we conclude that no reasonable fact finder could form a firm belief or conviction that [Mother] knowingly placed or knowingly allowed [J.M.] to remain in conditions or surroundings that endangered [his] physical or emotional well being.

*Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266; *In re A.S.*, 261 S.W.3d at 83–85). "Therefore, we hold that the evidence is legally insufficient to terminate [Mother's] parental rights pursuant to subsection (D)." *Id.*

### D. Sufficient Evidence Supports the Ground E Finding

In reviewing ground E, "it is not necessary that the conduct be directed at the child or that the child actually suffer[s] injury." *In re J.J.*, 911 S.W.2d 437, 440 (Tex. App.—Texarkana 1995, writ denied) (citing *Boyd*, 727 S.W.2d at 533); *see* TEX. FAM. CODE ANN. § 161.001(1)(E). "[I]t is sufficient that the child's well-being be jeopardized or exposed to loss or injury." *In re J.J.*, 911 S.W.2d at 440 (citing *Boyd*, 727 S.W.2d at 533). "[T]he cause of the endangerment must be the direct result of the parent's conduct and must be the result of a [continuing] course of conduct rather than a single act or omission." *In re A.S.*, 261 S.W.3d at 83; *see In re Baby Boy R.*, 191 S.W.3d 916, 925 (Tex. App.—Dallas 2006, pet. denied) ("Instability and incarceration

can be continuing course of conduct supporting termination."). "[C]ourts look to what the parent did both before and after the child's birth to determine whether termination is necessary." *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). "[A] parent's imprisonment may be considered as a factor on the issue of endangerment, but imprisonment alone will not constitute endangerment." *In re H.L.F.*, 2012 WL 5993726, at \*7 (citing *Latham v. Dep't of Fam. & Protective Servs.*, 177 S.W.3d 341, 348 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *In re C.L.C.*, 119 S.W.3d 382, 397 (Tex. App.—Tyler 2003, no pet.); *In re D.T.*, 34 S.W.3d 625, 636 (Tex. App.—Fort Worth 2000, pet. denied)).

> Although "mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child, . . . incarceration does support an endangerment finding 'if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child.'"

*In re B.A.M.*, No. 01-25-00695-CV, 2026 WL 191683, at \*5 (Tex. App.—Houston [1st Dist.] Jan. 22, 2026, pet. denied) (mem. op.) (quoting *In re J.F.-G.*, 627 S.W.3d at 312–13 (quoting *Boyd*, 727 S.W.2d at 533–34)). "Thus, our supreme court has held that '[a] parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment.'" *Id.* (quoting *In re J.F.-G.*, 627 S.W.3d at 313).

The Department presented evidence that Mother was incarcerated at the time of trial and was also "picked up" on other charges during the life of the case. Mother remained homeless, unemployed, and absent for the entirety of the case. The trial court also heard ample evidence of Mother's seeming lack of interest in the case and J.M., showing that she never communicated

with her attorney, the Department, or participated in any of her services, making no effort or attempt to regain custody of J.M. *See In re A.S.D.*, No. 14-24-00909-CV, 2025 WL 1375194, at *7 (Tex. App.—Houston [14th Dist.] May 13, 2025, pet. denied) (mem. op.) ("A parent's failure to comply with a service plan designed to enhance their parenting skills and prevent harm to the child can be considered in the [ground] E endangerment analysis."); *In re J.A.R.*, 696 S.W.3d 245, 255 (Tex. App.—Houston [14th Dist.] 2024, pets. denied) (finding that parents' failure to participate in services to address their conduct supported termination based on endangerment); *In re M.L.G.J.*, No. 14-14-00800-CV, 2015 WL 1402652, at *10 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) (mem. op.) ("A parent's efforts to improve or enhance parenting skills are relevant in determining whether a parent's conduct results in endangerment."). Mother made no effort to see J.M. or to even remain involved in the case and absented herself from the final hearing. *See In re C.U.D.*, No. 14-21-00538-CV, 2022 WL 710727, at *4 (Tex. App.—Houston [14th Dist.] Mar. 10, 2022, pet. denied) (mem. op.) (holding that parent's failure to be active in child's life supported an endangerment determination); *In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("A factfinder may also infer that a parent's lack of contact with the child and absence from the child's life endangered the child's emotional well-being.").

Based on the foregoing analysis, the trial court could have reasonably concluded that Mother engaged in conduct that endangered the physical or emotional well-being of J.M. The evidence was therefore legally and factually sufficient to support the trial court's predicate

12

determination of endangerment under ground E. *See In re J.O.A.*, 283 S.W.3d 336, 344–45 (Tex. 2009). Accordingly, we overrule the portion of Mother's issue challenging that finding.

## III.    Best Interests of J.M.

Texas law imposes "a strong presumption that the best interest[s] of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE ANN. § 153.131(b)). As the party requesting termination, the Department bears the heavy burden of rebutting that presumption. *See In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). No specific set of facts are required to establish that termination is in the best interests of a child, but there are several nonexclusive factors that may guide the fact-finder's best-interest determination. *See In re L.M.*, 572 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors, referred to as the *Holley*[4] factors, include: "(1) the desires of the child;" (2) the child's emotional and physical needs now and in the future; "(3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist" those persons seeking custody in promoting the best interests of the child; (6) the "plans for the child" by the individuals or agency seeking custody; "(7) the stability of the home or proposed placement; (8) [any] acts or omissions of the parent that may indicate that the existing parent-child relationship is not" appropriate; "and (9) any excuse for the [parent's] acts or omissions." *In re A.A.*, 670 S.W.3d 520, 534 n.57 (Tex. 2023) (citing *Holley*, 544 S.W.2d at 372). However, "the *Holley* factors are not a checklist[.]" *In re C.C.*, 720 S.W.3d 41, 59 (Tex.

---

[4]*Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).

App.—Texarkana 2025, no pet.). "Consequently, the fact-finder may choose to give greater weight to one factor over others." *Id.* Further, the same evidence "used to establish grounds for termination under section 161.001[(b)](1) may be probative in determining the best interest[s] of the child." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## A. Analysis

J.M. was under two years old at the time of trial and was therefore unable to express his own desires. However, the record shows that J.M. was thriving in a foster home along with a foster brother, that he was bonded to his foster parents, and that his foster parents were bonded to him. As a result, the trial court could have formed a firm belief or conviction that the first *Holley* factor weighed in favor of terminating Mother's parental rights. *See In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied).

In analyzing the next three *Holley* factors, we consider whether Mother is able "to provide adequate care for [her] child, lacks parenting skills, or exercises poor judgment." *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied). J.M.'s emotional and physical needs were typical of a child his age, but the record shows that Mother was either incarcerated, or unemployed and homeless during the course of the case, evidence that she was unable to care for J.M.'s needs. With Mother being unable to provide a safe and stable home, nor indicating any parenting skills, the trial court could have formed a firm belief or conviction that the second, third, and fourth *Holley* factors weighed in favor of termination.

14

Mother also failed to take advantage of any programs available to assist her and failed to attend any courses recommended in her service plan. As such, the trial court could have formed a firm belief or conviction that the fifth *Holley* factor weighed in favor of termination.

The next two factors consider the plans for J.M. and the stability of the home. Because Mother was absent for the final hearing and the majority of the case proceedings, and there was no contact from Mother, there was no indication of any future plans for J.M. Mother was either incarcerated or homeless during the pendency of the matter and could not provide a stable home for J.M. In contrast, the Department placed J.M. in a loving home that met all of his needs. The trial court could have formed a firm belief or conviction that the sixth and seventh factors weighed in favor of termination.

The last two factors related to the parent-child relationship, of which there was none in this case. J.M. was removed from Mother's care at birth, and Mother made no attempts to visit or create and maintain any bond with J.M. Moreover, even though numerous attempts were made to contact Mother during the pendency of this matter, she never responded, refused jail visits, and failed to appear for the final hearing. The trial court could have formed a firm belief or conviction that the final two factors weighed in favor of termination of Mother's rights to J.M.

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that it was sufficiently clear and convincing such that a reasonable fact-finder could have formed a firm belief or conviction that termination of the parent-child relationship between Mother and J.M. was in J.M.'s best interests. As a result, we overrule Mother's last point of error.

## IV.    Conclusion

Although we conclude that the evidence was insufficient to terminate Mother's parental rights under ground (D), we find that legally-sufficient evidence supports the unchallenged statutory grounds for termination as well as under statutory ground (E).  We also find that the trial court's determination that termination was in J.M.'s best interests was supported by the record.  We, therefore, modify the trial court's judgment to delete the ground (D) finding and affirm the judgment, as modified.  *See* TEX. R. APP. P. 43.2(b) (empowering courts of appeals to "modify the trial court's judgment and affirm it as modified").

Scott E. Stevens
Chief Justice

Date Submitted:    June 9, 2026
Date Decided:    July 10, 2026